UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

REGINA M. FEUER,

                    Plaintiff,                    **REPORT &**
                                                 **RECOMMENDATION**
                                             CV 16-5732 (ADS) (GRB)

             -against-

ANDREW M. SAUL,
Commissioner of Social Security,

                    Defendant.


----------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

      Plaintiff Regina M. Feuer ("plaintiff") commenced this civil action pursuant to the Social

Security Act, 42 U.S.C. § 405(g) seeking judicial review of a final decision of defendant Nancy

A. Berryhill (the "Commissioner" or "defendant"), the acting commissioner of the Social

Security Administration ("SSA") at the time of filing,[1] which denied her application for

disability insurance benefits.  In this matter, plaintiff, an individual with a substantial earnings

history who suffered catastrophic health events that rendered her unable to engage in her

occupation, and seemingly, any gainful employment challenges the Commissioner's

determination that she is not entitled to disability insurance benefits.  That determination rejects

the findings of two treating physicians of long standing, whose assessments of plaintiff's residual

functional capacity suggest that she is incapable of performing even sedentary work.  The ALJ's

---

[1] The Court notes that plaintiff originally named Nancy A. Berryhill as the defendant in this
action, but pursuant to Fed. R. Civ. P. 25(d), Commissioner Andrew M. Saul is automatically
substituted for Acting Commissioner Berryhill.  *See* 45 U.S.C. § 405(g) ("Any action instituted
in accordance with this subsection shall survive notwithstanding any change in the person
occupying the office of Commissioner of Social Security or any vacancy in such office.").

rejection of the treating physician's opinions rests upon, among other things, (1) the opinion of a consultative physician who testified outside his area of expertise, failed to review the entire record, and did not take the opportunity to remediate the failure and (2) the vocational expert's testimony that nearly 2.8 million individuals nationally are engaged in the unskilled sedentary position of document preparer for microfilming.  Taken together, these actions are highly troubling.

Presently before the undersigned, upon the referral of the Honorable Arthur D. Spatt for Report and Recommendation, are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth herein, and in light of the deference accorded to the Commissioner to provide and consider a full and fair record, the undersigned respectfully recommends that plaintiff's motion for judgment on the pleadings be granted in part and denied in part, the Commissioner's cross-motion for judgment on the pleadings be denied, and the case remanded for further proceedings to provide the Commissioner the opportunity to complete the record and allow a full determination.

## BACKGROUND

### I.    Procedural History

#### A.  Administrative History

Plaintiff filed a Title II application for Social Security Disability Benefits on May 24, 2013, alleging disability as of February 22, 2012 due to a brain aneurysm, a stroke, a shunt in her head, and ischemia.  Tr. at 11, 197-98, 239.[2]  Plaintiff's application for benefits was denied on October 24, 2013, and plaintiff requested a hearing before an Administrative Law Judge.  *Id*. at 102-10, 113-22.  ALJ Andrew S. Weiss (the "ALJ") conducted a hearing on June 2, 2015 during

---

[2] References to "Tr." are the Transcript of the Administrative Record filed in this case.

2

which plaintiff appeared with counsel and testified. *Id*. at 50-101. In addition, plaintiff's husband testified at the hearing and, at the request of the ALJ, a medical expert and a vocational expert testified. *Id.*

On July 31, 2015, the ALJ issued a decision (the "ALJ decision") finding that plaintiff was not disabled as defined in the Social Security Act, and therefore was not entitled to disability insurance benefits. *Id*. at 8-27. On August 16, 2016, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1-7.

### B. The Instant Case

Plaintiff commenced this lawsuit on October 14, 2016. DE 1. On January 19, 2018, plaintiff moved for judgment on the pleadings. DE 26. The Commissioner submitted a cross-motion for judgment on the pleadings on January 19, 2018 and April 12, 2019. DE 28, 33. On April 9, 2019, the district court referred the cross-motions for judgment on the pleadings to the undersigned for report and recommendation. DE 32.

### II.    Factual Background

For the purposes of these motions, familiarity with the underlying administrative record is presumed. In light of the undersigned's recommendation to remand this case for further proceedings, the Court recounts only the evidence relevant to that determination.

### A. Non-Medical Evidence

Plaintiff was born on November 2, 1968, and she completed high school in 1986. Tr. at 55, 197, 240. Plaintiff's work history began in 1984 and, as relevant here, she worked as a finance manager for several car dealerships from 2005 until February 23, 2012, when she had a brain aneurysm and shortly thereafter, a stroke. *Id*. at 57, 202-04, 218-25. Plaintiff returned to

work as a salesperson in a car dealership from November 2012 to December 15, 2012, but was unable to manage the hours and stress associated with the position. *Id.* at 56-57, 248-51. Plaintiff had a significant earnings record and was insured for benefits through December 31, 2017. *Id*. at 13, 202-04.

Plaintiff completed a Function Report on August 20, 2013, in which she reported that (i) she lived with her family in a house; (ii) she was able to shower, spend time with family, and watch television; (iii) she needed her family to remind her to attend to personal needs and to take her medication; and (iv) she was unable to work anymore, do basic household chores, prepare meals, or be around stress. *Id*. at 209-17. As to traveling, plaintiff reported that depending on her physical condition that day, she could walk, ride in a car, drive a car, and shop. *Id*. at 212-13. Plaintiff stated that her alleged disability has affected her ability to focus, socialize, pay bills and follow written instructions. *Id*. at 213-16. As to physical limitations, plaintiff reported she is restricted in her ability to lift; could not sit or stand for any length of time; could only walk for a "little bit;" could climb stairs minimally; had difficulty kneeling, squatting, reaching and using her hands; and suffered paralysis in her vocal cords. *Id*. at 214-55.

Represented by counsel, plaintiff testified at the administrative hearing before the ALJ on June 2, 2015. *Id*. at 50-101. She testified that following her brain aneurysm and stroke, she was paralyzed on her right side, confined to a wheelchair, but eventually regained the use of her right side within a year. *Id*. at 58-59. Plaintiff stated that she was doing better, but still had difficulty focusing, paying attention and maintaining her balance while standing, walking, and using the stairs. *Id*. at 58-60. She reported that she was unorganized, drove locally but "had a lot of fender benders," lightly shopped, and attended rehabilitation. *Id*. at 60-66. Plaintiff also testified that although she could work for a day or two, part-time work was not an option because she had

4

difficulty focusing and her medications (Trazadone and Buspar) made her sleepy. *Id*. at 58-62. She tried to return to part time work in December 2013, but was unsuccessful because of her focus and attention issues. *Id*. at 57-65.

### B. Relevant Medical Evidence

#### (1) Treatment Records

Plaintiff's medical records include hospital records, radiology reports, and laboratory reports related to her initial hospitalization at Winthrop University Hospital from February 29 to March 20, 2012 to, *inter alia*, repair aneurysms; treat intraoperative hemorrhaging, left lower lung collapse, left vocal cord paralysis, dysphagia, and dysponia; and place a ventriculoperiteoneal shunt. *Id*. at 329-523, 575-677. Medical evidence also references treatment records from Kessler West Institute for Rehabilitation, *id*. at 524-37, and hospital records, radiology reports, and laboratory reports from Winthrop University Hospital and North Shore Hospital, *id*. at 540-53, 565-677. Finally, the record includes treatment records from neurosurgeon Dr. Jonathan Brisman, *id*. at 363-66, 560-64, 682-90; neurologists Dr. Elzbieta Wirkowski, *id*. at 538-39; and Dr. Abraham Glasman, *id*. at 305-06, 680-90; Dr. Saul Modlin, *id*. at 408-69, 554-59; and primary care physician Dr. Andrew Peck, *id*. at 691-703.

#### (2) Treating Physician Functional Assessment Opinions

##### (a) Dr. Glasman's April 12, 2013 Opinion

On April 12, 2013, Dr. Glasman, plaintiff's neurologist, completed a medical functional assessment, based on his treatment records and objective medical examinations, in which he opined that plaintiff was limited to standing and walking less than one hour in an eight-hour workday; to sitting for less than four hours in an eight-hour workday; and to lifting and carrying for less than ten pounds if required to do so for a total of one-third of an eight-hour workday

(approximately 2 hours and 40 minutes); and to lifting and carrying for less than five pounds if required to do so for a total of two-third of an eight-hour workday (approximately 5 hours and 20 minutes).  *Id*. at 305-06.  Dr. Glasman advised that plaintiff required periods of bed rest during the workday.  *Id*. at 306.  Dr. Glasman based his opinion on a November 18, 2012 CT scan which revealed lucencies in the left cerebellum and left pon, indicative of ischemia.  *Id*.  He noted that plaintiff had two large aneurisms, with clips noted, and a ventricular catheter in place. *Id*.  Dr. Glasman reported that plaintiff had generalized fatigue and episodic imbalance.  *Id*. at 305-06.   At the time of the assessment, Dr. Glasman reported he had provided plaintiff treatment since February 2012.  *Id*.

### (b) Dr. Glasman's May 8, 2015 Opinion

On May 9, 2015, Dr. Glasman completed a medical functional assessment, based on his treatment records and objective medical examinations, in which he opined that plaintiff was limited to standing and walking less than one hour in an eight-hour workday; to sitting for less than four hours in an eight-hour workday; and to lifting and carrying for less than ten pounds if required to do so for a total of one-third of an eight-hour workday (approximately 2 hours and 40 minutes); and to lifting and carrying for less than five pounds if required to do so for a total of two-third of an eight-hour workday (approximately 5 hours and 20 minutes).  *Id*. at 680-81.  Dr. Glasman advised that plaintiff required frequent breaks during the workday and would have difficulty concentrating on work tasks.  *Id*. at 681.  In his report, Dr. Glasman indicated that he based his opinion on an October 16, 2014 MRA of the brain showing two aneurysm clips and PICA clipping and a November 18, 2012 CT scan showing ischemic changes in the left cerebellum pon.  *Id*.  He further reported that plaintiff presented persistent deficits in concentration, focus and energy level which limited her ability for gainful employment.  *Id*.  At

the time of the assessment, Dr. Glasman reported he had provided plaintiff treatment since February 22, 2012. *Id*. at 680.

### (c) Dr. Peck's May 22, 2015 Opinions

On May 22, 2015, Dr. Peck, plaintiff's primary care physician, completed a medical functional assessment, in which he opined that plaintiff was limited to standing and walking less than one hour in an eight-hour workday; to sitting for less than four hours in an eight-hour workday; and to lifting and carrying for less than ten pounds if required to do so for a total of one-third of an eight-hour workday (approximately 2 hours and 40 minutes); and to lifting and carrying for less than five pounds if required to do so for a total of two-third of an eight-hour workday (approximately 5 hours and 20 minutes). *Id*. at 691-92. Dr. Peck opined that plaintiff required frequent breaks during the workday and would have difficulty concentrating on work tasks. *Id*. at 692. In his assessment, Dr. Peck reported that plaintiff needed to improve her balance and required a low stress environment. *Id*. He reported that plaintiff presented persistent deficits in concentration, focus and energy level which limited her ability for gainful employment. *Id*.

In a separate statement also dated May 22, 2015, Dr. Peck reported that he had been providing treatment to plaintiff since her stroke in February 2012, and believed plaintiff to be permanently disabled due to her neurological condition. *Id*. at 693. Dr. Peck stated that plaintiff experienced severe loss of focus and ran the risk of falling because her balance was not 100%. *Id*. Dr. Peck reported that plaintiff develops headaches if she concentrated too long on any one subject, and that she has been advised to keep stressful situations to a minimum. *Id*. Dr. Peck stated that his goal was to prevent plaintiff "from being in a high risk situation that would

endanger her health and possibly her life." *Id*.  He concluded that plaintiff could no longer work. *Id*.

### (3) Consultative Medical Opinions

#### (a) Dr. Andrea Pollack

At the request of the Commissioner, Dr. Andrea Pollock, a family practitioner, examined plaintiff on October 18, 2013, for a consultative neurologic examination. *Id*. at 320-24.  Dr. Pollack observed that plaintiff was in no acute distress during the examination and her gait was slightly unsteady. *Id*. at 321.  She was unable to perform tandem walk heel-to-toe test due to secondary unsteadiness on a Romberg Test (used to test neurological function for balance). *Id*. Plaintiff's station was normal, she did not use an assistance devise to walk, and she was able to rise from a chair without difficulty. *Id*.  She was only able to recall one out of three words given to her at the beginning of the examination, and there was no suggestion of impairment in insight or judgment. *Id*.

Dr. Pollack diagnosed a history of ruptured aneurysm, status post-craniotomy and clipping; cerebrovascular accident; vocal cord paralysis on the right; right-sided weakness; left shoulder and neck pain; and decreased visual acuity bilaterally. *Id*. at 322.  Dr. Pollack's prognosis was noted as stable. *Id*.  Based on her examination, Dr. Pollack opined that plaintiff presented evidence of memory impairment and was restricted in performing activities that required fine visual acuity bilaterally. *Id*.  Dr. Pollack further opined that plaintiff had "moderate to marked" restriction in lifting, carrying, pushing, and pulling, and "mild to moderate" restriction in walking, standing, climbing stairs and bending. *Id*. at 322-23.  In addition, Dr. Pollack reported that plaintiff should avoid heights, operating heavy machinery, activities which require heavy exertion, and activities that would put her at risk of falling. *Id*. at 323.

**(b) Dr. Steven Shilling**

At the request of the ALJ, Dr. Steven Shilling, M.D., a non-examining medical expert with a specialty in cardiovascular disease, testified via telephone at the administrative hearing . *Id*. at 76-87.  Dr. Shilling testified that (i) his specialty was cardiovascular disease, not neurology; (ii) he reviewed the medical evidence through plaintiff's rehabilitation after the stroke, *viz.* "that basic one year time frame;" (iii) he would have made "more detailed notes" when he came to "the cardiovascular stuff," but had not found any; and (iv) in evaluating plaintiff's limitations he was basing it on the "limited information" he reviewed and reminded the ALJ that he was a cardiologist.  *Id*. at 77-80.  Specifically, Dr. Shilling reported that he had reviewed only Exhibits 1F to 8F out of a medical record comprising 39 exhibits.  *Id*. at 86.

Based on his limited review, Dr. Shilling assessed that plaintiff's physical functioning had plateaued with weakness of 4/5 in her right upper and lower extremities and concluded the weakness was in the "mild" category.  *Id*. at 80.  He stated there was definite weakness and explained plaintiff had experienced a catastrophic event.  *Id*.  Dr. Shilling testified that he based his opinion on Exhibit 3F, the consultative examination report by Dr. Pollack.  *Id*. at 80-81.  Notably, at the hearing, plaintiff's attorney pointed out that Dr. Pollack's report assessed "moderate to marked" limitation in lifting, carrying, pushing, and pulling and "mild to moderate" limitations in standing, walking, climbing stairs, and bending.  *Id*. at 81.  Dr. Shilling further testified that he would expect plaintiff would have some cognitive issues, but that these functions were outside his area of specialty.  *Id*. at 82.  ("I mean we're a little out of my specialty.  I would expect, you know, some cognitive issues.  But guys, I can't get any more specific than that, I'm not a neurologist.").  Dr. Shilling then concluded that the fact that plaintiff had a VP shunt indicated she had once had problems with intracranial pressure, "which [could] cause "all sorts

9

of long term, cognitive problems." *Id*. at 83.  Finally, when the ALJ asked the medical expert to explain plaintiff's hemiparesis, Dr. Shilling testified that he did not "know" the medical term. *Id*. at 86-87.

### (4) Vocational Evidence

Frank A. Lidner, a vocational expert, testified at the administrative hearing on plaintiff's application for disability benefits.  *Id*. at 88-99.   Lidner classified plaintiff's past work as a finance manager for a car dealership and stated the closest DOT title to this was loan officer which is classified as a sedentary exertion position.  *Id*. at 89-90.  The ALJ posed numerous hypotheticals giving Lidner a range of limitations.  *Id*.  at 90-99.  When asked by the ALJ if there were jobs in the national economy that could be performed by a hypothetical individual of plaintiff's age, education, and past work experience who: (i) could sit for approximately six hours in an eight-hour work day; (ii) could stand or walk for four hours per eight-hour workday; (iii) could occasionally balance, push and pull; (iv) could frequently stoop, kneel, crouch and crawl; (v) had no limitations in reaching, handling or fingering, and no limitations in vision or communication; (vi) could occasionally be around noise and vibrations; (vii) could frequently be exposed to dust and odors; (viii) could frequently maintain concentration for extended periods and occasionally perform complex tasks; but (ix) who must avoid hazardous machinery,[3] Lidner stated that while such an individual could not perform plaintiff's past relevant work, she could perform unskilled sedentary positions of document preparer for microfilming (with over 2.8 million jobs nationally); assembler (with 218,740 jobs nationally); and a surveillance system

---

[3] Although the ALJ ultimately relied on the functional limitations set forth in this hypothetical in his administrative decision, it is unclear the basis for this hypothetical at the hearing.

monitor (with 9,150 jobs nationally) as these jobs are performed in the national economy.  *Id*. at 90-92.

When the ALJ amended the hypothetical to limit the worker to only occasionally concentrate for extended periods of time in an eight-hour workday, Lidner opined there would be no jobs available with those limits.  *Id*. at 93.  When the ALJ again amended the hypothetical and asked if there were jobs in the national economy that could be performed by an individual who: (i) could sit for approximately four hours in an eight-hour work day; (ii) could stand or walk for one hour per eight-hour workday; (iii) could lift five pounds, one-third of an eight-hour day; and; (iv) could lift less than five pounds, two-third of an eight-hour day, [4] Lidner stated those limits did not meet even the sedentary criteria and therefore opined there would be no jobs available with those limits.  *Id*. at 93.

Plaintiff's attorney then questioned Lidner whether there were jobs in the national economy that could be performed by such an individual who was "off-task" approximately 10 percent of the time in an eight-hour workday due to difficulty concentrating on work over a period of time, Lidner opined that such a person would be precluded from work.  *Id*. at 94-95.

### III.    The ALJ's Decision

The ALJ issued his decision on July 31, 2015, applying the five-step process described below, pursuant to 20 C.F.R. §§ 404.1520.  *Id*. at 11-22.

---

[4] In this third hypothetical, the ALJ appears to have referenced the functional limitations set forth in Exhibit 37F, which was the May 9, 2015 Medical Assessment Physical Ability-Work Related Activities completed by Dr. Glasman, plaintiff's neurologist, based on his treatment records and objective medical examinations (MRA and CT scan), in which he opined that plaintiff was limited to standing and walking less than one hour in an eight-hour workday; to sitting for less than four hours in an eight-hour workday; and to lifting and carrying for less than ten pounds if required to do so for a total of one-third of an eight-hour workday (approximately 2 hours and 40 minutes); and to lifting and carrying for less than five pounds if required to do so for a total of two-third of an eight-hour workday (approximately 5 hours and 20 minutes).  *Id*. at 680-81.

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the initial alleged onset date of February 22, 2012. *Id*. at 13. At step two, the ALJ found that plaintiff had the following severe impairment: status-post stroke from aneurysm. *Id*. at 14. At step three, the ALJ found that plaintiff did not have an impairments that met or medically equaled the severity of one of the listed impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 15. The ALJ then assessed plaintiff's residual functional capacity ("RFC") and determined that she had:

> the RFC to perform light[5] work as defined in 20 C.F.R. § 404.1567(b), except she is limited to sitting 6 hours in an 8-hour day; standing/and or walking 4 hours in an 8 hour day; occasional climbing, balancing, and pushing/pulling; and frequent stooping, crouching, kneeling, and crawling. Environmentally, she must avoid hazardous machinery, have only occasional contact with noise and vibrations, and can have frequent contact with dust and odors. In addition, the claimant has frequent ability to maintain concentration for sustained periods and her ability to complete complex tasks is occasional.

*Id*. at 16.

At step four, with input from the vocational expert, the ALJ concluded that plaintiff was not able to perform her past relevant work as a finance manager/loan officer, which is skilled sedentary work, because the non-exertional demands of her past work would exceed plaintiff's current residual functional capacity. *Id*. at 21. The ALJ proceeded to the final step of the five-step process and determined that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (July 2, 1996).

could perform. *Id*. The ALJ found that plaintiff was, therefore, not under a disability as defined under the SSA from February 22, 2012 through the date of his decision. *Id*. at 22.

## DISCUSSION

### I. Standard of Review

#### A. Social Security Disability Standard

To qualify for disability benefits under Title II, an individual must be (i) "insured for disability benefits;" (ii) not have attained retirement age; (iii) be a U.S. citizen or a foreign national under certain circumstances not relevant here; and (iv) have a "disability." 42 U.S.C. § 423(1). The Social Security Act ("SSA") defines "disability" to mean that a claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see Burgess v. Astrue,* 537 F.3d 117, 119 (2d Cir. 2008). The SSA further states that the impairment must be "of such severity that [the claimant] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see Shaw v. Chater,* 221 F.3d 126, 131-32 (2d Cir. 2000).

The SSA has promulgated regulations prescribing a five-step sequential evaluation process for determining whether a claimant's impairment meets the definition of "disability." *See* 20 C.F.R. §§ 404.1520; 416.920. The Second Circuit has summarized this procedure as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third

13

inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [or her] disabled without considering vocational factors such as age, education and work experience . . . .   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant can perform.

*Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).  The claimant bears the burden of proof at

steps one through four of the sequential inquiry, while the burden shifts to the Commissioner at

step five to show that the claimant is capable of working.  *Id.*

### B.  Scope of Review

In reviewing a decision of the Commissioner, a district court may set aside a

determination "only if it is based upon legal error or if the factual findings are not supported by

substantial evidence in the record as a whole."  *Greek v. Colvin,* 802 F.3d 370, 374-75 (2d Cir.

2015) (citations omitted); *see* 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v.

Perales,* 402 U.S. 389, 401) (internal quotation marks omitted)).  Furthermore, the findings of

the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C.

§ 405(g), and thus, the reviewing court does not decide the case *de novo.  Halloran v. Barnhart,*

362 F.3d 28, 31 (2d Cir. 2004); *see Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.

1998) ("[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the

record"); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (holding that if the court finds that

there is substantial evidence to support the Commissioner's determination, the decision must be

upheld, "even if [the court] might justifiably have reached a different result upon a *de novo*

review").  "To determine whether the findings are supported by substantial evidence, the

14

reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel,* 177 F.3d 128, 132 (2d Cir. 1999) (internal quotation marks and citation omitted).  An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002).

"Conversely, a remand for further proceedings is warranted when the ALJ has failed to provide a full and fair hearing, to make necessary findings, or to have correctly applied the law and regulations." *Douglas v. Berryhill,* CV 17-0694 (JMA), 2019 WL 1017341, at *5 (E.D.N.Y. Mar. 4, 2019) (citing 42 U.S.C. § 405(g) and *Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999)).  In addition, a remand for further proceedings "is also appropriate when an ALJ overlooks an important piece of evidence in the record." *Douglas,* 2019 WL 1017341, at *5; *see, e.g., Carnevale v. Gardner,* 393 F.2d 889, 890-91 (2d Cir. 1968)  (remanding case for further proceedings to allow the Secretary of Health, Education and Welfare to consider a major piece of evidence ignored by the hearing examiner).

## II.    Analysis

Plaintiff challenges the ALJ's decision finding that she was not disabled during the relevant period, arguing principally that the ALJ failed to properly weigh the record evidence, thereby failing to properly determine plaintiff's residual functional capacity.  *See* DE 26-27, 29.  Specifically, plaintiff contends that the ALJ erred when he (1) assigned "great weight" to the opinion of Dr. Shilling, a non-examining medical expert who did not review the entire medical record; and (2) failed to properly weigh the treating source opinions from Dr. Glasman and Dr. Peck.  *See id*.  The Commissioner disagrees and maintains that the ALJ's decision was supported by substantial medical evidence.  DE 28.  As set forth below, the undersigned finds that the

ALJ's residual functional capacity analysis was not supported by substantial evidence, and therefore respectfully recommends that this matter be remanded for further proceedings consistent with this decision.

### A.  Weight of the Record Evidence

#### (1) RFC Determination

A determination of the claimant's residual functional capacity specifies "the most [a claimant] can still do despite [the claimant's] limitations." *Barry v. Colvin,* 606 F. App'x 621, 622 n.1 (2d Cir, 2015); *see Crocco v. Berryhill,* No. 15-CV-6308 (MKB), 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).  "In determining a claimant's RFC, [t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." *Springfield v. Commissioner of Soc. Sec.,* 2019 WL 1508994, at *11 (E.D.N.Y. Mar. 31, 2019) (internal quotation marks and citations omitted); *see Barry,* 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider all of the relevant medical and other evidence including a claimant's subjective complaints of pain") (internal quotation marks and citation omitted).  "[A]n ALJ's RFC determination must set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Campbell v. Astrue,* 456 F. App'x 4, 6 (2d Cir. 2012) (internal quotation marks and citation omitted).  "[W]here an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand may be

16

warranted.  *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013).  To be clear, an RFC

assessment is based on a review of the entire record, including the medical opinion evidence.

*See* 20 C.F.R. §§ 404.1527(d)(2).

### (2) Medical Opinion Evidence – The Treating Physician Rule

"Regardless of its source, the ALJ must evaluate every medical opinion in determining

whether a claimant is disabled under the [Social Security] Act."  *Pena ex rel. E.R. v. Astrue,* No.

11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (internal quotation

marks omitted); *see* 20 C.F.R. §§ 404.1527(c); 416.9279(c).  "An ALJ's decisions regarding the

weight to be accorded to each medical opinion in the record and how to reconcile conflicting

medical opinions is governed by the treating physician rule."  *Servedio v. Comm'r of Soc. Sec.,*

No. 16-CV-4130 (JMA), 2018 WL 3321428, at *2 (E.D.N.Y. July 5, 2018).  Here, the

assessment of the medical opinion evidence was governed by the treating physician rule in effect

when plaintiff filed her application.[6]

Social Security regulations require that an ALJ give "controlling weight" to the medical

opinion of an applicant's treating physician so long as that opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see Halloran,*

362 F.3d at 32.  Medically acceptable clinical and laboratory diagnostic techniques include

consideration of a "patient's report of complaints, or history, [a]s a diagnostic tool."  *Green-*

*Younger v. Barnhart,* 335 F.3d 99, 107 (2d Cir. 2003); *see Petrie v. Astrue,* 412 F. App'x 401,

---

[6] The SSA recently adopted regulations that change the standards applicable to the review of
medical opinion evidence for claims filed on or after March 27, 2017.  *See*  20 C.F.R. §
404.1520c.  Because plaintiff filed her claim before that date, the undersigned applies the
treating physician rule under 20 C.F.R. § 404.1527.

405 (2d Cir. 2011) ("The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient").  Although a treating physician may share an opinion regarding the severity of the disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(1); *see Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999).

When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ "must consider various factors to determine how much weight to give to the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)).  These factors include "(i) the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion, (iii) consistency of the opinion with the entirety of the record; (iv) whether the treating physician is a specialist; and (v) other factors that are brought to the attention of the SSA that tend to support or contradict the opinion." *Id.*; *see Selian,* 708 F.3d at 418.  The ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Burgess,* 537 F.3d at 129-30; *see* 20 C.F.R. § 404.1527(d)(2).  Failure to provide "good reasons" for the weight assigned to a treating physician constitutes a ground for remand.  *Snell,* 177 F.3d at 133; *see Halloran,* 362 F.3d at 32-33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians['] opinion").

By contrast, the opinions of non-treating sources, to wit, a consultative medical doctor or a non-examining medical expert, should be accorded less weight than treating sources in the overall evaluation of disability.  *See Selian,* 708 F.3d at 419 ("ALJs should not rely heavily on the findings of consultative physicians after a single examination"); *see Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[I]n evaluating a claimant's disability, a consulting physician's

18

opinions or report should be given limited weight . . . because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day."); *Hidalgo v. Bowen,* 822 F.2d 294, 297 (2d Cir. 1987) (A "corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis").  Moreover, the SSA regulations point out that even where a treating physician's opinion is not entitled to "controlling weight," the opinion is generally entitled to "more weight" than the opinions of non-treating and non-examining sources.  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see* Social Security Ruling 96-2p (S.S.A. July 2, 1996) ("In many cases a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight").

### B.  The ALJ's Evaluation of the Medical Evidence

In his decision, the ALJ found that plaintiff had the following severe impairment:  status-post stroke from aneurysm.  Notwithstanding this finding, the ALJ found that plaintiff was not disabled because she had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b)[7] with certain limitations.  In making this determination, the ALJ gave "great weight" to Dr. Shilling, a non-examining medical expert under contract with SSA, who testified telephonically at the hearing:

---

[7] Although the ALJ determined that plaintiff could perform light work, *see supra,* the ALJ concluded in his decision that there were significant number of jobs in that the national economy that plaintiff could perform that involved sedentary work.  Tr. at 16-22.  As defined in Section 404.1567(a), sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles such as docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

19

> The undersigned gives great weight to the opinion of cardiovascular disease medical expert, Dr. Shilling who testified at the hearing *despite the fact he did not have the opportunity to view all the evidence of record.* Dr. Shilling testified that the claimant's diagnoses include status post stroke due to intracranial aneurysm. Dr. Shilling acknowledged that treatment notes a year after the claimant's stroke indicated that she had some issues with balance; however, her strength has markedly improved. Specifically, he stated her strength was a 4/5. Further, Dr. Shilling opined that the claimant's limitations based on the records he reviewed were mild. This opinion is consistent [sic] the record as a whole and accorded great weight.

*Id.* at 20 (emphasis added).

Despite the fact that the medical expert never examined plaintiff and admittedly reviewed only a portion of the record, the ALJ heavily relied on Dr. Shilling's assessment that plaintiff's physical limitations were "mild." *Id.* The ALJ's reliance on Dr. Shilling's opinion is misplaced.

First, the ALJ erred in according "great weight" to the opinion of Dr. Shilling, a non-examining consultant, to determine plaintiff's residual functional capacity. Dr. Shilling represented, and the ALJ acknowledged, that Dr. Shilling had not reviewed a substantial portion of the medical evidence. *See id.* at 79, 86 (testifying that he had reviewed Exhibits 1F to 8F out of 39 Exhibits). In particular, Dr. Shilling did not review Exhibits 9F to 39F, spanning over three hundred sixty pages of the administrative record, including *inter alia* radiology reports, hospital records, office treatment records, laboratory reports, and recent medical source statements. *See id.* at 340-703. This error is further compounded by the ALJ's reliance on Dr. Shilling's assessment to override the opinions of the examining physicians, namely the medical opinions of (i) Dr. Glasman, plaintiff's neurologist who had treated her from October 12, 2012 to May 8, 2015 and (ii) Dr. Peck, plaintiff's primary physician who treated her from February 22, 2012 to May 22, 2015.

Where, as here, the non-examining consultant failed to consider the entirety of a plaintiff's medical records and the ALJ relied on the non-examining consultant to override the

opinion of treating physicians, the Second Circuit has found remand appropriate. *See Gunter v. Comm'r of Soc. Sec.,* 361 F. App'x 197, 200 (2d Cir. 2010) (finding remand appropriate where non-examining physician "made his assessment without reviewing the complete record of [the claimant's] medical history"); *see Hildago v. Bowen,* 822 F.2d 294, 298 (2d Cir. 1987) (finding the Commissioner's evidence was not sufficiently substantial to override the treating physician's opinion of plaintiff's abilities where the non-examining consultant did not review the complete medical records of the plaintiff which included medical findings supporting the examining physician's diagnosis, and remanding the case); *see also Murphy v. Berryhill,* No. 17-CV-0916 (JMA), 2019 WL 1075605, at *8-9 (E.D.N.Y. Mar. 7, 2019) ("The ALJ erred in assigning great weight to a non-examining medical expert's opinion who did not review a large portion of plaintiff's medical records): *Perez v. Commissioner of Soc. Sec.,* No. 16-CV-5206 (KAM), 2019 WL 359980, at *12 (E.D.N.Y. Jan. 29, 2019) (same). As the Second Circuit has explained, in such circumstances, "[c]onsideration of [the claimant's] entire medical records might . . . alter[] the non-examining's conclusions." *Gunter,* 361 F. App'x at 200; *see also Perez*, 2019 WL 359980, at *13. Thus, Dr. Shilling's opinion may have been different had he reviewed the complete medical record.

Moreover, at the hearing, Dr. Shilling mischaracterized the assessment of plaintiff's residual limitations set forth in the exhibit that he cited to support his opinion. Dr. Shilling opined in conclusory fashion that plaintiff's limitations were "mild" based on Exhibit 3F, the consultative neurologic report of Dr. Pollack. *Id.* at 80-81. However, Dr. Pollack's report assessed that plaintiff had "moderate to marked" limitations in lifting, carrying, pushing and pulling; and "mild to moderate" limitations in standing, walking, climbing stairs, and bending. *Id.* at 320-323. At the very least, a non-examining medical expert "must . . . accurately

characterize the important medical records underlying his opinion." *See McNeil v. Berryhill,* No. 17-CV-4070, 2019 WL 644825, at *6 (E.D.N.Y. Feb. 15, 2019). Given the mischaracterization regarding the one exhibit Dr. Shilling relied on as well as his vague and conclusory assessment of plaintiff's limitations, Dr. Shilling's opinion fails to provide sufficient support for the ALJ's residual functional capacity assessment of plaintiff. *See Brady v. Colvin,* No. 14-CV-5773 (ADS), 2016 WL 1448644, at *9 (E.D.N.Y. Apr. 12, 2016) (holding that "the use of the terms 'mild' and 'moderate' to describe the [p]laintiff's limitations with regard to sitting and standing do not provide enough information to allow the ALJ to make the necessary inference that the [p]laintiff could perform the full range of sedentary work") (citations omitted); *Simmons v. Colvin,* No. 15-CV-0377 (MKB), 2016 WL 1255725, at *14 (E.D.N.Y. Mar. 28, 2016) (finding the assessment that plaintiff had "moderate limitations for general activity" was "too vague to provide sufficient support for the ALJ's specific functional assessments that [p]laintiff could, for example, carry ten pounds occasionally and less than ten pounds frequently and sit for six hours during an eight-hour workday").

Further, it is troubling that in response to an inquiry made by the ALJ at the hearing, Dr. Shilling testified that he did not understand a relevant neurological term in the record and did not offer to research it or supplement his testimony, notwithstanding his designation as a non-examining medical expert whose opinion is based entirely on a review of plaintiff's medical records. *Id.* at 86-87 (testifying he did not know the term "hemiparesis"). *See McNeil,* 2019 WL 644825, at *6 (finding that where an ALJ affords great weight to an opinion and less weight to a treating physician, the fact that the non-examining physician "did not adequately analyze the medical records is particularly troublesome because . . . his opinion relies solely on a review of

[p]laintiff's medical record . . . [and his] opinion must, at the very least, accurately characterize the important medical records underlying his opinion").

Finally, Dr. Shilling's opinion is at odds with those of the treating physicians, who found plaintiff's exertional abilities to be much more limited.[8] *See Burgess,* 537 F.3d at 128 (holding that the opinion of a non-examining physician may be deemed not "sufficiently substantial to undermine the opinion of the treating physician" when it is not adequately supported by the evidence in the record). The Second Circuit has made clear that "the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisors' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Vargas v. Sullivan,* 898 F.2d 293, 295-96 (2d Cir. 1990); *see Gatien v. Berryhill,* No. 15-cv-4739 (ADS), 2017 WL 6397734, at *5 (E.D.N.Y. Dec. 13, 2017) ("the ALJ cannot rely solely on the RFCs of [] consulting examiners as evidence contradicting the Treating Physician RFC. This is because an inconsistency with a consultative examiner is not sufficient, on its own, to reject the opinion of the treating physician") (internal quotation marks and citations omitted).

In summary, because the ALJ failed to properly evaluate the record evidence relevant to plaintiff's residual functional capacity, remand is warranted. Accordingly, the undersigned respectfully recommends that the District Court remand this action to allow the ALJ to obtain

---

[8] For example, in his most recent May 8, 2015 opinion, plaintiff's treating neurologist Dr. Glassman reported that plaintiff could lift/carry 5 to 10 pounds; could sit for less than one hour per eight-hour workday; could stand/sit for less than four hours per eight-hour workday; would require frequent breaks during the workday; and would have difficulty concentrating on work tasks. Tr. at 680-81. In addition, in his most recent May 22, 2015 opinion, plaintiff's primary care physician Dr. Peck similarly reported that plaintiff could lift/carry 5 to 10 pounds; could stand/walk for less than one hour per eight-hour workday; could sit for less than four hours per eight-hour workday; would require frequent breaks during the workday; and would have difficulty concentrating on work tasks. *Id.* at 691-92.

23

and consider the opinion of a non-examining medical expert who has reviewed the complete medical records of plaintiff.  Of course, the ALJ "remains free to direct such further medical examination and analysis as may be appropriate." *Tarsia v. Astrue,* 418 F. App'x 16, 19 (2d Cir. 2011).  The undersigned further recommends that the ALJ then determine plaintiff's RFC based on the proper consideration of all relevant evidence in accordance with the regulations, including the assessment of medical opinion evidence.[9]

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that plaintiff's motion for judgment on the pleadings be granted in part and denied in part, the Commissioner's cross-motion for judgment on the pleadings be denied, and the case remanded for further proceedings consistent with this decision.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for each of the parties.  Any written objections to the Report and Recommendation must be filed

---

[9] In light of the recommendation of remand, the undersigned does not reach the question of whether the ALJ properly weighed the medical source opinions concerning plaintiff's claimed limitations except to note that some of the reasons the ALJ provided for assigning less than controlling weight to plaintiff's treating physicians, *viz.* that the treating physicians' opinion(s) were inconsistent with plaintiff's reported daily activities, conservative course of treatment, and the record as a whole, Tr. at 19-21, may have constituted "good reasons" for not granting controlling weight to those opinions.  *Murphy v. Berryhill,* No. 17-CV-0916 (JMA), 2019 WL 1075605, at *8-9 (E.D.N.Y. Mar. 7, 2019).  That said, however, one of the reasons the ALJ provided for according "little weight" to one of plaintiff's treating physicians, Tr. at 19, namely that Dr. Glasman's opinion was inconsistent with Dr. Shilling, is deficient for the reasons set forth above.  Accordingly, the undersigned further recommends that on remand, the ALJ reassess, in light of any new evidence accepted in the record, the proper weight for each of the medical opinions.  *See Murphy,* 2019 WL 1075605, at *9; *see also Gatien v. Berryhill,* No. 15-cv-4739 (ADS), 2017 WL 6397734, at *6 (E.D.N.Y. Dec. 13, 2017) ("It is the province of the ALJ, not the reviewing court, to weigh and evaluate evidence").

with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. §

636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of

time for filing objections must be directed to the district judge assigned to this action prior to the

expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within**

**fourteen (14) days will preclude further review of this report and recommendation either**

**by the District Court or Court of Appeals.**  *Mejia v. Roma Cleaning, Inc.,* No. 17-3446, 2018

WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the

Magistrate's finding" by failing to timely object); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604

(2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any

further judicial review of the magistrate's decision."); *cf. Thomas v. Arn*, 474 U.S. 140, 145

(1985) ("It does not appear that Congress intended to require district court review of a

magistrate's factual or legal conclusions, under *de novo* or any other standard, when neither party

objects to those findings."). This is particularly true, where, as here, a party has been "warned of

the consequences of not objecting to the Magistrate's findings." *Meija,* 2018 WL 4847199, at *1.

Dated:  Central Islip, New York
         August 30, 2019

                            /s/ Gary R. Brown
                            GARY R. BROWN